UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

MOBIL CERRO NEGRO, LTD., et al.,

                       Arbitration Award Creditors,

                    -v-

BOLIVARIAN REPUBLIC OF VENEZUELA,

                       Arbitration Award Debtor.

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/4/2015

14 Civ. 8163 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On February 13, 2015, the Court issued an Opinion and Order ("the Opinion"), denying a motion by the Bolivarian Republic of Venezuela ("Venezuela") to vacate a judgment entered in Part One ("the Part One judgment") against it. Dkt. 37, *reported at Mobil Cerro Negro Ltd. v. Bolivarian Republic of Venezuela*, No. 14 Civ. 8163 (PAE), 2015 WL 631409 (S.D.N.Y. Feb. 13, 2015) ("*Mobil*"). That judgment, in favor of Mobil Cerro Negro, Ltd. and related entities ("Mobil"), was for $1,600,042,482, plus 3.5% interest, compounded annually from June 27, 2007 until payment. *Mobil*, 2015 WL 631409, at *2; Dkt. 6. The judgment was based on an arbitral award ("the Award") in the same amount entered against Venezuela on October 9, 2014, by a panel of the International Centre for Settlement of Investment Disputes ("ICSID"). *See Mobil*, 2015 WL 631409, at *2. Venezuela now moves to amend the Part One judgment by reducing the rate of post-judgment interest. Dkt. 38. For the reasons that follow, Venezuela's motion is denied.

By way of background, Venezuela raised this issue on February 17, 2015, when it submitted a motion to amend the Opinion, Dkt. 38, and an accompanying brief and declaration,

Dkt. 39–40.  Venezuela raised two issues.  The first, relating to the terms under which the Court's temporary stay of enforcement of the Part One judgment would remain in place, was the subject of a previous order.  Dkt. 41.  The second issue—the one addressed herein—concerns the rate of interest that will run on the Part One judgment.  Venezuela asks the Court to amend the Opinion by "clarify[ing]" that the Part One judgment was to accrue "post-judgment interest at the rate provided under 28 U.S.C. § 1961," not the higher 3.25% interest provided for in the ICSID panel's award (Dkt. 3, Ex. 1 ¶ 404 ) and recapitulated in the Part One judgment (Dkt. 6).  Dkt. 40.  The Court invited a response from Mobil, which submitted a brief and declaration in opposition, Dkt. 43–45.  Although the Court had stated that it did not invite a reply, Venezuela submitted a letter reply nonetheless.  Dkt. 46.

Although styled as a request for clarification, Venezuela's motion in fact asks the Court to modify the terms of the ICSID panel's Award, inasmuch as that Award expressly directs that interest at a 3.25% rate run on the $1,600,042,482 award against Venezuela until payment.  Dkt. 3, Ex. 1 ¶ 404.  As such, the relief Venezuela seeks is flatly precluded by the principles governing recognition of ICSID awards, which the Court reviewed at length in its Opinion.  *See Mobil*, 2015 WL 631409, at *18–22.

As the Court there explained in the course of upholding the Part One court's conversion of the ICSID panel's Award into a federal judgment based on Mobil's *ex parte* petition, the ICSID panel acted pursuant to authority granted by an international treaty, the Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("the ICSID Convention"), *see* 17 U.S.T. 1270, T.I.A.S. No. 6090, whose terms in turn Congress adopted in 1966 when it passed an enabling statute, 22 U.S.C. § 1650a.  *See Mobil*, 2015 WL 631409, at *3–5.  As the Court further explained, under the treaty and the statute, courts of the United

States, a contracting state, are required to recognize all aspects of awards issued by ICSID arbitral panels, and have no charter to undertake any substantive review of such awards. *Id.* at *4. Such courts are further obliged to enforce the pecuniary obligations of these awards, although not other obligations such as specific performance. *Id.* at *19–20. As the Court noted, under Article 54 of the ICSID Convention and under the enabling statute, domestic courts' recognition of ICSID awards is mechanistic and effectively automatic. *See, e.g.*, *id.* at *10 ("Beyond confirming that the ostensible award did in fact issue from ICSID, a court presented with an application for recognition is not empowered to re-assess the merits of the award—it does not sit as a court of appeals and is not empowered to undertake substantive review. The only venue in which a party can challenge the merits of such an award is ICSID itself." (citing ICSID Convention art. 53)); *id.* at *4 ("National courts thus lack the power to set aside or modify ICSID awards."). The legal regime governing recognition of ICSID awards thus differs markedly from that governing other international arbitral awards, such as those issued pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention") and its enabling statute, chapter 2 of the Federal Arbitration Act (the "FAA"), which provide for limited substantive review of arbitral awards. *See Mobil*, 2015 WL 631409, at *18–22.[1]

---

[1] As set out in the Opinion, the New York Convention sets out 16 grounds (in seven subsections) on which a court can "refuse[]" to recognize an arbitral award. N.Y. Conv. art. V. Based on these exceptions, federal courts, presented with petitions to confirm—or to vacate—awards rendered under the Convention, are frequently called upon to undertake such review. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 307 (2010) (addressing scope of parties' agreement to arbitrate); *Zeiler v. Deitsch*, 500 F.3d 157, 160 (2d Cir. 2007) (addressing whether an arbitration panel was properly composed, given resignation of one of three arbitrators); *Avis Rent A Car Sys., Inc. v. Garage Emps. Union, Local 272*, 791 F.2d 22, 25 (2d Cir. 1986) (addressing whether arbitrator exceeded his powers); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, No. 96 Civ. 5853 (LMM), 1996 WL 728646, at *1 (S.D.N.Y. Dec.

These principles compel rejection of Venezuela's motion to amend the ICSID panel's Award. While Venezuela packages this motion as a request for clarification, presumably to avoid the treaty and enabling statute's ban on substantive review of ICSID awards, Venezuela's motion unavoidably seeks substantive review of a part of the ICSID Award—its interest rate provision. The Court lacks authority to undertake such review. As noted, both the ICSID Convention (in Article 54) and the enabling statute (§ 1650a) obligate a federal court to recognize (and also to enforce) the "pecuniary obligations" of an ICSID award. Interest is a "pecuniary obligation": "Pecuniary" means "of, relating to, or consisting of money; monetary," and interest is monetary, for it involves the payment of money. Black's Law Dictionary (10th ed., 2014); *accord Hudson v. I.R.S.*, No. 03 Civ. 172 (TJM), 2004 WL 1006266, at *7 (N.D.N.Y. Mar. 25, 2004). Thus, when an ICSID panel like the one here awards interest "until payment," a federal court must recognize and enforce that pecuniary term. Any other reading of the Court's obligations would flout the plain language of the enabling statute. This the Court cannot do, for statutory interpretation "begins with the language of the statute" and, where the language is "clear," "it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (citations and internal quotation marks omitted).

Further, notwithstanding Venezuela's request for "clarification," there is nothing unclear about the ICSID Award. The Award clearly states that 3.25% compound interest applies from the date of expropriation (June 27, 2007) until "payment . . . in full." *See* Dkt. 3, Ex. 1 ¶ 404 ("[T]hese sums shall be increased by annual compound interest on their amount at the rate of 3.25% from 27 June 2007 up to the date when payment of this [sic] sums has been made in

---

18, 1996) (addressing whether arbitral award was irrational and whether arbitrators manifestly disregarded the law and the terms of the parties' agreement), *aff'd*, 126 F.3d 15 (2d Cir. 1997).

full."); *accord id.* ¶ 397.  This text is unambiguous.  There is no basis for the Court to revise these plain terms.

Venezuela's request that the Court supervene the ICSID panel's determination of the interest rate to apply until payment is problematic for another reason.  It would create the possibility, indeed the likelihood, of different interest rates applying in different countries in which an arbitral award creditor sought to recognize and enforce the same ICSID award.  *See generally* Christoph G. Schreuer, *The ICSID Convention: A Commentary* 1136 (2d ed., 2009) (noting the possibility of "the simultaneous introduction of proceedings for recognition and enforcement of an ICSID award in several Contracting States," and explaining that "[p]artial payment in different States would be possible and legitimate").  Uniform imposition by all countries of the interest rate set out in an ICSID award avoids this incongruous, confusing, and potentially discordant outcome.

The authorities on which Venezuela relies do not advance its cause.  Venezuela mostly notes that 28 U.S.C. § 1961 typically provides the post-judgment rate of interest.[2]  *See, e.g.*, *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 269 (2d Cir. 1989).  But the Second Circuit has held that, while § 1961 usually supplies the post-judgment rate of interest, it does not always do so.  *See, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 371

---

[2] 28 U.S.C. § 1961 provides: "Interest shall be allowed on any money judgment in a civil case recovered in a district court.  Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State.  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment.  The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges."

F.3d 96, 102 (2d Cir. 2004) (noting that parties may choose, by contract, "to deviate from § 1961"). And here, under three familiar canons of construction, any tension between § 1961 and § 1650a must be resolved in favor of § 1650a, rather than § 1961. First, a specific statute trumps a general one,[3] and § 1650a—the ICSID enabling statute—is more targeted to the context of recognition and enforcement of an ICSID award than the more general § 1961. Second, a later-enacted statute may inform, and affect, the interpretation of an earlier-enacted statute,[4] and § 1650a post-dates § 1961 by 18 years. Third, where "fairly possible, a United States statute is to be construed so as not to conflict with international law or with an international agreement of the United States."[5] And here, as explained in the Opinion, the United States has an international obligation to enforce all pecuniary obligations in ICSID awards. *See, e.g.*, *Mobil*, 2015 WL 631409, at *4, *19–22.

Venezuela also relies on cases arising under the FAA. *See* Dkt. 40 (citing *Westinghouse*, 371 F.3d at 102; *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 452 (5th Cir. 2013)). In

---

[3] *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2068 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general.") (citation omitted); *Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996) ("When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim.").

[4] *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) ("[T]he implications of a statute may be altered by the implications of a later statute. This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand. As we recognized recently in *United States v. Estate of Romani*, [523 U.S. 517, 530–531 (1998)] 'a specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it ha[s] not been expressly amended.'").

[5] Rest. (Third) of Foreign Relations Law § 114 (1987) (citing, *inter alia*, *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804); *Weinberger v. Rossi*, 456 U.S. 25, 33 (1982); *Lauritzen v. Larsen*, 345 U.S. 571, 578 (1958); *Chew Heong v. United States*, 112 U.S. 536, 539–40 (1884)).

these cases, federal courts looked to § 1961 to set the interest rate that would apply, between the date of judgment and the date of payment, to federal judgments recognizing arbitral awards. But these cases are inapposite, for two reasons. First, the ICSID enabling statute provides that the FAA "shall *not* apply to enforcement of awards rendered pursuant to the [ICSID] convention." 22 U.S.C. § 1650a(a) (emphasis added). And, second, the ICSID enabling statute, unlike the FAA, leaves no room for substantive review or amendment of an underlying arbitral award. Presumably for this reason, in the cases in this District that have recognized *ICSID* awards that set an interest rate until payment, courts have commonly used the interest rate set in the ICSID award as the measure of post-judgment interest.[6]

It was Venezuela's choice to agree to arbitrate before ICSID, rather than before a tribunal governed by chapter 2 of the FAA, which governs non-ICSID international arbitrations. The choice of the ICSID forum meant that there would be no room for substantive challenges by the losing party to the Award, save within the ICSID regime itself. *See Mobil*, 2015 WL 631409, at *4; ICSID Convention art. 53. Having chosen and litigated in the ICSID forum and having lost in that forum, Venezuela cannot now choose to apply the rules of a different arbitral regime, the FAA, so as to avoid a term of the ICSID panel's Award (the interest rate until payment) that it now rues.

---

[6] *See, e.g.*, *Liberian E. Timber Corp. (LETCO) v. Republic of Liberia*, 650 F. Supp. 73, 75 (S.D.N.Y. 1986) (noting that the Part One court entered judgment for the full amount of the award, "including interest, based upon and as specified in the award issued by the ICSID arbitration panel"); *Grenada v. Grynberg*, No. 11 Misc. 45 (DAB) (S.D.N.Y. Apr. 29, 2011) (ordering "post-Award interest as provided in the Award at a rate of 3.25%, compounded semi-annually beginning on December 10, 2010 and continuing until payment in full of the Award") (attached as Exhibit 7 to Dkt. 45 ("Baratz Decl.")); *Funnekotter v. Republic of Zimbabwe*, No. 09 Civ. 8168 (CM) (S.D.N.Y. Feb. 1, 2010) ("In accordance with paragraph 148(3) of the Award, Petitioners are awarded 10% interest compounded every six months . . . until full payment of those amounts") (attached as Exhibit 9 to Baratz Decl.).

The Court, therefore, denies Venezuela's motion to modify the Part One judgment so as to override the post-judgment interest rate set in the ICSID panel's Award. The judgment shall continue to accrue interest at the rate that the ICSID Award specified: 3.25% compounded annually, until Venezuela has made payment in full. Dkt. 3, Ex. 1 ¶ 404.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: March 4, 2015
       New York, New York